# **<u>EXHIBIT 2</u>**

Case 1:20-cv-01800-CM   Document 1-2   Filed 02/28/20   Page 2 of 19

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

------------------------------------- X

AYESHA WHYTE, an individual,         :

               Plaintiff,        :    INDEX No. _____

      vs.                 :    **SUMMONS**

WEWORK COMPANIES, INC,        :

           Defendant.      :

------------------------------------- X

        To the above-named DEFENDANT WEWORK COMPANIES, INC:

        You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of day of service )or within 30 days after the service is completed if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

        The basis of venue is that DEFENDANT is located in and transacts business in this County; and (b) the conduct and acts of DEFENDANT complained of herein occurred in all or in substantial part in New York County.

Executed at Randolph, New Jersey
Dated: February 28, 2020

RAFKIN ESQ.
1201 SUSSEX TURNPIKE, SUITE 102
RANDOLPH, NJ 07869
(973) 891-3370

By:_____
    Seth A. Rafkin

    **Attorneys for Plaintiff**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------- X

AYESHA WHYTE                              :

       Plaintiff,                           :      INDEX CASE NO.

   vs.                                  :

WEWORK COMPANIES, INC.,                   :      **COMPLAINT FOR RACE AND GENDER DISCRIMINATION, RETALIATION AND EQUAL PAY VIOLATIONS**

      Defendant.                           :

                         DEMAND FOR JURY TRIAL

----------------------------------------- X

       Plaintiff Ayesha Whyte ("Whyte"), by and through her attorneys, Rafkin Esq., PLLC, as and for her complaint against WeWork Companies, Inc. ("WeWork" or the "Company") alleges as follows:

       1.     Plaintiff brings this action against WeWork for race and gender discrimination, retaliation and equal pay violations pursuant to the New York City Human Rights Law (Administrative Code § 8-107 *et seq*.) ("NYCHRL"), the New York State Human Rights Law (N.Y. Executive Law § 290 *et seq*.) ("NYSHRL") and the New York Labor Code (NYLL §§ 194, 215), and, in the alternative, for race and gender discrimination and retaliation pursuant to the District of Columbia Human Rights Act (D.C. Code D.C. Code § 2-1402.01 *et seq*.) ("DCHRA"), and the federal Equal Pay Act (29 U.S.C. § 206).

PARTIES

       2.     Plaintiff Whyte is an experienced attorney, with expertise in the area of employee relations and human resources related legal matters in large corporations.  She is also an African American woman.

Case 1:20-cv-01800-CM   Document 1-2   Filed 02/28/20   Page 5 of 19

3.      Defendant WeWork is a multi-national corporation providing shared office space and related services to business and individuals around the world.  WeWork is headquartered in New York City, where it maintains its executive offices, and is incorporated under Delaware law. During all relevant times, WeWork was Plaintiff's employer within the meaning of all applicable statutes.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter and venue is proper in this County because Defendant WeWork regularly transacts business in this County and the events giving rise to the claims occurred in this County and were engaged in by Defendant.

## NATURE OF THE ACTION

5.      This is a case about WeWork's failure to practice what it preaches when it comes to workplace diversity.  It is a case that arises out of the gap between what WeWork says about its workplace diversity and the reality underneath.

6.      WeWork prides itself on the number of people of color it counts among its workforce.  The reality, however, is that the vast majority of those individuals are hired into (and do not progress out of) the community service associate ("CSA") position.  CSAs are the WeWork employees who work out of a WeWork location to assist WeWork members.  CSAs are among the lowest paid of WeWork employees.  As noted, the vast majority of WeWork's employees of color work as CSAs.  Adding insult to injury, those promoted out of WeWork Community-based positions, i.e., those working at a WeWork member location, are disproportionately Caucasian.

7.      Take the CSAs out of the equation and WeWork's picture of a workplace that includes people of color in meaningful numbers crumbles.  Focus on positions of leadership and it all but disintegrates.  Behind the scenes, at multiple levels throughout the organization, WeWork

keeps people of color out of leadership positions and under compensated.  At the same time, WeWork is all too happy to use images of these same people to promote its façade of real diversity.

        8.     It is a pattern that comes from the top.  Examples abound:

        a.    Jennifer Berrent, WeWork's co-president, stated to WeWork's diversity team that she "can't empathize with black people."  At the time, Berrent was WeWork's top legal and human resources officer.

        b.     WeWork required another woman of color to be photographed for several company publications because WeWork regarded her skin color as making her look like she could be Indian or Hispanic.

        c.    WeWork has also repeatedly hired less experienced Caucasians for human resources positions for which existing employees of color were well qualified. Indeed, in a six month period, WeWork hired four Director-level employees into human resources roles.  Most of these positions were not even posted internally, i.e., existing employees of color were not made aware that the positions (for which they were qualified) were open.

        d.    Another African-American woman was told she was being hired into a senior human resources position.  Yet, shortly after she was hired, she was told she was being demoted to a lesser role with a substantial cut in compensation (a move bearing striking similarity to WeWork's actions regarding the Plaintiff in this matter).  This woman then performed well, yet was sidelined while the Caucasian employees in the same position were promoted.  This same woman then applied for another position.  She was interviewed by other WeWork employees and was set for a final interview with Miguel McKelvey, one of WeWork's founders.  However, shortly before the final interview, there was an

FILED: NEW YORK COUNTY CLERK 02/28/2020 08:39 AM
NYSCEF DOC. NO. 1 Case 1:20-cv-01800-CM Document 1-2 Filed 02/28/20 Page 7 of 19 RECEIVED NYSCEF: 02/28/2020

INDEX NO. 152172/2020

all-hands meeting. At that meeting, WeWork announced that the position had been offered to a Caucasian man with no prior human resources experience. Needless to say, her "final" interview was cancelled.

e.   And, Ayesha Whyte, the Plaintiff in this case, suffered similar mistreatment. As set forth in more detail below, WeWork enticed her to leave her prior job. It lured her with the promise of a "Director" position based in WeWork's Manhattan headquarters as well as a high salary. Once Plaintiff, an African American woman, accepted the offer and resigned from her previous job, WeWork did an about-face. It said she would not have the position she was hired for after all. She wouldn't be based in the Manhattan headquarters and her salary was being cut by 20%. It then hired a non-African American into the role she was promised at a salary more than twice as high as that promised to Plaintiff.

f.   Further, WeWork has also discriminated on the basis of gender in compensation. Thus, Whyte, as an African-American woman, has suffered on both fronts. For example, while WeWork has awarded substantial additional equity grants to similarly situated men and women who are not African-American, Plaintiff was awarded none. Plaintiff also was sidelined while WeWork brought in a Caucasian man doing the same type of work as Plaintiff and yet paid him more. This individual was hired on a temporary basis and yet is being paid *more than twice as much as Plaintiff.*

g.   Another African-American employee, who was hired as the Program Lead for WeWork's Diversity & Inclusion organization, experienced similar discrimination from WeWork. Although WeWork has been happy to use his

Case 1:20-cv-01800-CM   Document 1-2   Filed 02/28/20   Page 8 of 19

image to help tout the company's image as diverse, in reality he was given little in the way of responsibility and relegated to tasks such as moving furniture around at WeWork's headquarters for events. And, when he had the temerity to complain about a Caucasian manager, he was placed on a performance improvement plan and threatened with termination. That was followed by a steady reduction in duties and other retaliatory conduct culminating in the termination of his employment. Indeed, following his termination, a WeWork manager confided to this employee that the company had been trying to get him fired for months.

FACTS COMMON TO ALL COUNTS

9.      In 2018, Plaintiff Ayesha Whyte was working as the Corporate Director for Employee Relations at The Walt Disney Company. She was recruited by WeWork to join its legal department. Like most people, Plaintiff was not eager to leave a good paying job to make the same or less money or take a step down in terms of position. WeWork assured her that would not be the case.

10.     In August of 2018, WeWork issued an offer letter to Whyte for the position of Director, Employee Relations, working out of WeWork's Chelsea, New York headquarters. Plaintiff's offer letter sets our applicable "Terms & Conditions" of her employment and states that it is "governed by the laws of the State of New York, without regard to conflict of law principles."

11.      The offer letter promised an annual salary of $195,000. Whyte accepted the offer on August 21, 2018. She immediately began the process of relocating her family to a new state, including searching for new schools for her children and securing housing for her family.

12.     WeWork then went about retracting just about everything in the offer. With no apparent rhyme or reason, WeWork told Whyte that, in fact, she would not be the Director of

Employee Relations. Instead, she would fill an underdetermined position. WeWork also told her that she would not, in fact, be based in the New York headquarters. Instead, she would be staying put in Washington, D.C. And, within a few months of being hired, WeWork told her that her salary was being cut by 20%. Whyte was eventually told that her title was Director of People Partner Employee Relations.

13. Relying on WeWork's offer, Whyte had already quit her prior employment, where she was earning more than $160,000 in salary. In other words, Whyte had no practical choice but to stick it out with WeWork and hope things would improve. They didn't.

14. Toward the end of 2018, WeWork then told Whyte that it was now in fact going to hire for a position that was essentially the one for which Whyte was originally hired. Adding insult to injury, Whyte was required to vet resumes for the candidates. The position was first offered to a Caucasian man who had also previously worked at Disney but in a lower level position than Whyte. When that fell through, the position was offered to a Caucasian woman, who had previously been rejected more than once by WeWork as unqualified for at least two positions. Whyte, meanwhile, was not even offered to interview for the position.

15. As 2019 unfolded, Whyte learned that other Caucasian employees in the same or substantially similar positions were being paid more in salary.

16. In April 2019, she raised this discriminatory pay issue directly with WeWork's Human Resources ("HR") department. Her complaint lingered. Indeed, it was not until the end of June 2019 that she was advised that an investigation had been completed – and then only because Plaintiff had continued to follow up. The investigator told Whyte there was no finding of wrongdoing. Yet, when Whyte asked the investigator to share the report or a summary of it, the investigator refused.

17.     Meanwhile, after Whyte raised her complaint, she learned about another open role at WeWork, Global Head of Employee Relations.  Again, this was a position for which Whyte was well-qualified.  Yet, the position was not posted either internally or externally.  Whyte learned about it by happenstance.  She asked if she could interview for the role.

18.     WeWork paid lip service to Whyte's request.  She was set up to interview with two people, neither of whom were decision makers.  In contrast, the person who was offered the position (a non-African-American) interviewed with numerous people including Jennifer Berrent, the hiring manager and then head of the legal and human resources teams.  In fact, it turns out that the person who was offered the job was the *only* person other than Whyte to interview for the position.  Further, even though WeWork's own recruiting documents identified the salary range for the position to be $195,000-$295,00, the salary provided to the person hired was an inexplicable $500,000 plus a signing bonus of $100,000, in addition to a grant of equity.  In short, Whyte, an African-American employee who had complained about a past discriminatory pay practice, was not allowed equal opportunity to seek or fair consideration for a position for which she was well qualified.

19.     WeWork has also repeatedly hired less experienced Caucasians into human resources positions for which existing employees of color were well qualified.  Indeed, in a six month period, it happened with respect to four Director-level and human resources roles.  Most of these positions were not even posted internally, i.e., existing employees of color were not made aware that the positions (for which they were qualified) were open.

20.     In addition, after Whyte had raised issues regarding her compensation she was questioned for the first time about work product she had provided that had already been approved and signed off on by senior legal counsel.  She was also questioned for the first time about ordinary travel expenses she had submitted.

Case 1:20-cv-01800-CM   Document 1-2   Filed 02/28/20   Page 11 of 19

21.     Further, WeWork began to freeze Whyte out of key aspects of her job and her department.  For example, she was excluded from an important workforce related project.  The leader of the project was Whyte's boss.  Yet, Whyte was not advised about the project or included in any of the related meetings, which for a period were occurring on a daily basis.  She was the only member of the Employee Relations team that was not included.  Moreover, the project concerned one of the key areas for which Whyte was (ostensibly) responsible.

22.     Whyte also suffered discrimination when it came to equity grants at WeWork. WeWork granted certain employees additional grants of WeWork stock in a process flagged as discriminatory.  And, indeed, despite performing well, Whyte was never awarded any additional equity.

23.     In September and early October of 2019, Plaintiff complained again to WeWork regarding its discrimination against Plaintiff, including the points raised above. WeWork advised that it would investigate the matters raised by Plaintiff.  The investigator sought no input from Plaintiff or her counsel and Plaintiff never received the results of such purported investigation. Plaintiff was never even informed as to who was conducting the purported investigation.

24.     Instead, on October 27, 2019, WeWork's counsel informed Plaintiff's counsel that it was terminating her employment. The basis for Plaintiff's termination was a Reduction in Force. However, no other employees in the Employee Relations department were affected. In the same call, WeWork counsel advised that the purported investigation found no wrongdoing on WeWork's part. Plaintiff's counsel requested the investigation report. Again, no report was ever provided.

25.     Remarkably, WeWork's retaliation did not end with the termination of Plaintiff's employment.  Once WeWork became aware of Plaintiff's intent to proceed with this case in this Court, it repeatedly threatened that it would seek an award of attorney's fees and costs against her

should she dare to bring her case in a public court of law instead of through private, confidential arbitration.

26.     WeWork issued these threats twice in writing occurring in December 2019 and in February 2020.  WeWork's threats asserted that Plaintiff was required to submit any dispute to private arbitration pursuant to WeWork's Employment Dispute Resolution Program, which purportedly requires arbitration of all claims against WeWork.  The fact, however, is that revisions to the New York Human Rights Law effective *months* before WeWork's threats, squarely ban the mandatory arbitration of employment discrimination and harassment claims.  The law plainly bans employers from relying on "*any clause or provision in any contract which requires* as a condition of the enforcement of the contract or obtaining remedies under the contract *that the parties submit to mandatory arbitration to resolve any allegation or claim of discrimination*, in violation of laws prohibiting discrimination."  N.Y. CPLR § 7515 (emphasis added).  Nonetheless, WeWork has threatened Plaintiff with financial harm.

## COUNT I
### RACE DISCRIMINATION PURSUANT TO THE NEW YORK STATE HUMAN RIGHTS LAW AND NEW YORK CITY HUMAN RIGHTS LAW

27.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

28.     Plaintiff is African-American.

29.     Plaintiff was qualified for and performing her job satisfactorily.

30.     Plaintiff suffered an adverse employment action, i.e., the discriminatory and retaliatory actions as set forth above.

31.     Plaintiff's race was a motivating factor in WeWork's adverse actions against her.

32.     Plaintiff was treated less well than non-African-Americans similarly situated employees.

33.     Defendant's conduct was engaged in with malice or reckless disregard for Plaintiff's rights.  Accordingly, punitive damages are warranted.

34.     As a result of WeWork's conduct, Plaintiff has suffered and is entitled to recover damages, including the value of lost back wages and benefits, including the value of equity, lost future earnings and benefits, including the value of equity, compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs.

### COUNT II
### GENDER DISCRIMINATION PURSUANT TO THE NEW YORK STATE HUMAN RIGHTS LAW AND NEW YORK CITY HUMAN RIGHTS LAW

35.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

36.     Plaintiff  is a member of a protected class (female).

37.     Plaintiff was qualified for her job and performing it satisfactorily.

38.     Plaintiff suffered an adverse employment action, i.e., the discriminatory and retaliatory actions as set forth above.

39.     Plaintiff's gender was a motivating factor in WeWork's adverse actions against her.

40.     Plaintiff was treated less well than similarly situated male employees.

41.     Defendant's conduct was engaged in with malice or reckless disregard for Plaintiff Whyte's rights.  Accordingly, punitive damages are warranted.

42.     As a result of Defendant WeWork's conduct, Plaintiff has suffered and is entitled to recover damages, including the value of lost back wages and benefits, including the value of equity, lost future earnings and benefits, including the value of equity, compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs.

## COUNT III
### RETALIATION IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW, AND THE NEW YORK CITY HUMAN RIGHTS LAW

43.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

44.     Plaintiff engaged in protected activity by, inter alia, complaining to WeWork about race discrimination and unfair treatment as set forth above.

45.     WeWork was aware of such protected activity because Plaintiff complained directly to WeWork more than once.

46.     Because of Plaintiff's protected activity, WeWork took adverse employment actions against her as set forth hereinabove, including but not limited to the termination of her employment.

47.     Plaintiff suffered emotional distress and humiliation as a result of WeWork's conduct.  WeWork's conduct was engaged in with malice or reckless disregard for Plaintiff's rights.  Accordingly, punitive damages are warranted.

48.     As a result of WeWork's conduct, Plaintiff has suffered and is entitled to recover damages, including lost back wages and benefits, including the value of equity, lost future earnings and benefits, including the value of equity, compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs.

## COUNT IV
### EQUAL PAY VIOLATIONS IN VIOLATION OF THE NEW YORK LABOR LAW § 194

49.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

50.     Plaintiff is a female.

51.    Plaintiff performed equal work on a job requiring equal skill, effort, and responsibility as certain men employed by WeWork, and performed such job under similar working conditions.

52.    WeWork treated Plaintiff's compensation differently than it treated the compensation of men.  This includes compensating Plaintiff less in salary, bonus and equity awards.

53.    This was part of a larger gender pay problem at WeWork as set forth more fully above.

54.    WeWork did not treat Plaintiff's compensation differently based (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

55.    Plaintiff suffered damages as a result of WeWork's violation including the loss of salary compensation, bonus compensation, and equity, in an amount to be proven at trial.

56.    Pursuant to New York law, in addition to the amount underpaid, Plaintiff is also entitled to liquidated damages in an amount up to 300% of the underpaid compensation.

57.    By reason of WeWork's conduct as alleged herein, Plaintiff is entitled to all remedies available under the New York Equal Pay Act, including but not limited to lost compensation and benefits, interest, attorneys' fees, and liquidated damages.

### COUNT V
### RETALIATION IN VIOLATION OF THE NEW YORK LABOR LAW § 215

58.    Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

59.    Plaintiff engaged in protected activity of which WeWork was aware, namely, that Plaintiff Whyte complained about its failure to pay her on an equal basis and asserting her right to pursue claims for discrimination and retaliation following termination of her employment.

60.     Plaintiff suffered an employment action that disadvantaged Plaintiff, in particular, excluding her from compensation increases and promotion opportunities, as well as threats of financial harms should she pursue her claims in a court of law.

61.     A causal connection exists between Plaintiff Whyte's protected activity and WeWork's actions against her as set forth above, including, the close temporal proximity of Plaintiff's protected activity and WeWork's adverse employment actions.

62.     Accordingly, Plaintiff is entitled to compensatory damages, liquidated damages and attorneys' fees and costs.

63.     Prior to filing this lawsuit, Plaintiff notified the Attorney General of her complaints thereby satisfying her administrative requirements.

### COUNT VI [IN THE ALTERNATIVE]
### RACE DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA
### HUMAN RIGHTS ACT

64.     Plaintiff hereby incorporates by reference the above paragraphs as though fully set forth herein.

65.     Plaintiff is an African-American woman.

66.     Plaintiff was an employee of WeWork.

67.     WeWork was Plaintiff's employer within the meaning of the District of Columbia Human Rights Act ("DCHRA").

68.     Plaintiff was subject to race discrimination as alleged above, including pay discrimination, discriminatory treatment with respect to other terms and conditions of her employment, and ultimately the termination of her employment.

69.     As a result of WeWork's conduct, Plaintiff has suffered and is entitled to recover damages, including lost back wages and benefits, lost future earnings and benefits, compensatory damages for emotional distress and humiliation.

70.     WeWork's conduct was intentional and engaged in with malice or reckless disregard for Plaintiff's rights.  WeWork leadership was aware of and ratified and condoned the discriminatory conduct.  Accordingly, punitive damages are warranted.

71.     Plaintiff is also entitled to recover attorneys' fees and costs pursuant to statute.

## COUNT VII [IN THE ALTERNATIVE]
### GENDER DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

72.     Plaintiff hereby incorporates by reference the above paragraphs as though fully set forth herein.

73.     Plaintiff was subject to gender discrimination as alleged above, including pay discrimination, discriminatory treatment with respect to other terms and conditions of her employment, and ultimately the termination of her employment.

74.     As a result of WeWork's conduct, Plaintiff has suffered and is entitled to recover damages, including lost back wages and benefits, lost future earnings and benefits, compensatory damages for emotional distress and humiliation.

75.     WeWork's conduct was intentional and engaged in with malice or reckless disregard for Plaintiff's rights.  WeWork leadership was aware of and ratified and condoned the discriminatory conduct.  Accordingly, punitive damages are warranted.

76.     Plaintiff is also entitled to recover attorneys' fees and costs pursuant to statute.

## COUNT VIII [IN THE ALTERNATIVE]
### RETALIATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

77.     Plaintiff hereby incorporates by reference the above paragraphs as though fully set forth herein.

78.     Plaintiff engaged in protected activity by, inter alia, complaining directly to WeWork about discriminatory conduct in the workplace.

79.     Because of Plaintiff's protected activity, WeWork took adverse employment actions against her as set forth more fully above. This includes, but is not limited to, terminating Plaintiff's employment.

80.     Plaintiff suffered emotional distress as a result of Defendant's conduct.    Such conduct was engaged in with malice or reckless disregard for Plaintiff's rights.    Accordingly, punitive damages are warranted.

81.     As a result of WeWork's conduct, Plaintiff has suffered and is entitled to recover damages, including lost back wages and benefits, including the value of equity, lost future earnings and benefits, including the value of equity, compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs.

82.     Plaintiff is also entitled to recover attorneys' fees and costs pursuant to statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby prays for judgment against Defendant on all causes of action and for recovery as follows:

a. Economic damages for past lost wages and benefits (including the value of equity) and future lost wages and benefits (including the value of equity) in an amount to be proven at trial;

b. Liquidated damages pursuant to statute;

c. Damages for emotional distress and humiliation in an amount to be proven at trial;

d. Punitive damages in an amount to be proven at trial;

e. Prejudgment interest;

f. Attorneys' fees and costs pursuant to statute; and

g. For such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable by jury in this action.

Executed at Randolph, New Jersey.
Dated: February 28, 2020

RAFKIN ESQ.
1201 SUSSEX TURNPIKE, SUITE 102
RANDOLPH, NJ 07869

By: _____
    Seth A. Rafkin (5026554)

Attorneys for Plaintiff Ayesha Whyte