UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AYESHA WHITE,<br><br>    Plaintiff,<br><br>  -against-<br><br>WEWORK COMPANIES, INC.,<br><br>    Defendant. | No. 20-cv-1800 (CM) |

**DECISION AND ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION**

McMahon, C.J.:

Plaintiff Ayesha Whyte brought this action alleging race and gender discrimination, retaliation, and equal pay violations against her former employer WeWork Companies, Inc. ("WeWork") in the Supreme Court of the State of New York. (Dkt. No. 1, Notice of Removal, Ex. 2, Complaint.)  WeWork promptly filed a notice of removal, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1.)

WeWork now moves this Court, pursuant to the Federal Rules of Civil Procedure as well as the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, for an order: (i) compelling Plaintiff to arbitrate her claims pursuant to the arbitration agreement she entered into with WeWork; (ii) enjoining Plaintiff's pursuit of her claims in any forum other than arbitration; and (iii) requiring Plaintiff and her counsel, jointly and severally, to reimburse WeWork for its costs and fees costs in defending against Plaintiff's court action.

For the reasons set forth below, that motion is GRANTED in part, and DENIED in part.

1

**BACKGROUND**

**A. Factual Background**

The following facts are taken from the complaint and documents that were submitted in connection with Defendant's motion to compel arbitration and for a permanent injunction. *See UBS Securities v. Leitner*, No. 17-cv-1365, 2017 WL 5054739, at *1 n.1 (S.D.N.Y. May 12, 2017) (citing *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010)).

On August 21, 2018, Whyte, an African-American attorney with experience in employee relations and human resources, signed a written offer of employment from WeWork to become a Director of Employee Relations in WeWork's New York office (the "Offer Letter"). (*See* Dkt. No. 10, Rhodes Decl., Ex. B.) As a condition of her employment, Whyte agreed to be bound by WeWork's Employee Dispute Resolution Program. (*Id.* Ex. A; the "EDRP" or "Arbitration Agreement.") The EDRP requires Whyte to submit all "Covered Claims" to arbitration before JAMS, including:

> "Any past, current or future controversy or claim, both accrued and unaccrued, between You and the Company, that arise[s] out of or relates in any way to your employment relationship with [WeWork], the term and conditions of your employment, or the termination thereof, including without limitation all employment related claims . . . regarding employment discrimination, civil rights, human rights, conditions of employment, or termination . . . (each a 'Covered Claim')."

(*Id.* at § 3.) There are a number of claims excluded from the definition of Covered Claims, including claims related to workers' compensation, unemployment benefits, and employee benefits plans. The definition of Covered Claims also includes a catchall carve-out for "claims that are legally prohibited from being subject to mandatory arbitration." (*Id.*)

The Arbitration Agreement includes two choice of law provisions. First, the section summarizing the EDRP states that "the Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings pursuant to this Agreement." (*Id.* at § 1.) Another section

2

entitled "Other Important Information" states that the Agreement itself "shall be governed and shall be interpreted in accordance with the laws of the State of New York." (*Id.* at § 6.)

Whyte alleges that WeWork failed to deliver on several of its commitments in the Offer Letter, first forcing her to work in the company's Washington, D.C. office instead of relocating her to New York, then installing her in different position than the one she had accepted, and finally by slashing her starting salary by 20%. (*See* Compl. ¶¶ 12-13; *see also* Dkt. No. 14, Whyte Decl. Ex. 1, at 2.)

The relationship went downhill from there, with Whyte noticing several instances of discrimination along race and gender lines, including unequal pay. (*See, e.g.*, Compl. ¶ 8(a)-(g).) When she raised her concerns with WeWork's human resources department, WeWork retaliated, withholding equity grants from Whyte that were awarded to similar employees, and freezing her out of important projects within her own department. (*Id.* ¶¶ 18-22.) After Whyte complained about discrimination for a second time, she was terminated, allegedly due to a "Reduction in Force." (*Id.* ¶¶ 23-24.)

### B. Procedural History

After Whyte shared a draft of her complaint with WeWork and informed the company's counsel that she intended to file suit in state court, the company reminded her of the EDRP, which, in WeWork's view, required her to submit her claims to arbitration. (*See* Dkt. No. 9, Turnbull Decl., Exs. C & D.) On February 12, 2020, WeWork sent Whyte a copy of a California Superior Court decision enforcing a substantively identical agreement to arbitrate between WeWork and another former employee. (*Id.* Ex. A; see also *Markel v. WeWork*, Case No. CGC-19-576580 (Cal. Super. Ct. Jan. 27, 2020).) WeWork also informed Whyte that it intended to file

a motion for sanctions if she breached the Arbitration Agreement by filing her complaint in state court. (Turnbull Decl., Ex. D at 2.)

On February 18, 2020, WeWork filed (and served on Whyte) a Demand for Arbitration with JAMS seeking a declaratory judgment that: (1) the Arbitration Agreement between WeWork and Whyte is valid and enforceable, and (2) Whyte must arbitrate the claims in her draft complaint. (*Id.*, Ex. E.)  That arbitration is presently stayed in Virginia, Plaintiff's place of residence, pending the resolution of the instant motion.

Ten days later, on February 28, 2020, Plaintiff filed her complaint in state court, asserting claims for race and gender discrimination, retaliation, and equal pay violations under the New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), and the New York Labor Law ("NYLL"), and, in the alternative, for race and gender discrimination and retaliation under the District of Columbia Human Rights Act ("DCHRA"). (Compl. ¶¶ 27-82.)

### C.  WeWork's Motion to Compel Arbitration

WeWork now seeks an order enjoining Whyte's lawsuit and compelling her to litigate her claims in front of JAMS in accordance with the Arbitration Agreement. (Dkt. No. 7.)  The company argues that: (i) the Arbitration Agreement is valid and enforceable, under both the common law of contracts and the Federal Arbitration Act; (ii) each of Whyte's claims falls within the definition of "Covered Claims" set forth in the agreement; (iii) a permanent injunction is necessary to ensure enforcement of the parties' agreement to arbitrate; and (iv) this Court should award WeWork attorney's fees for Whyte's vexatious decision to file her claims in violation of the Arbitration Agreement.  (Dkt. No. 8.)

In opposition, Whyte contends this Court cannot compel her to arbitrate this dispute, because New York Law, rather than the FAA, governs. And she notes that New York Civil Practice Law and Rules ("CPLR") § 7515 prohibits "mandatory arbitration to resolve any allegation or claims of discrimination," like the ones at issue here. (Dkt. No. 12.) Whyte adds that WeWork is not entitled to collect sanctions for her purportedly bad faith conduct since New York law clearly bars arbitration of her claims. (*Id.* at 12.)

## DISCUSSION

### I. WeWork's Motion to Compel is Granted.

#### a. Legal Standard

Arbitration is a matter of contract, and "the question of whether the parties agreed to arbitrate" – arbitrability – "is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The FAA, which "reflects a liberal federal policy favoring arbitration agreements," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citation omitted), dictates that any contract containing a binding arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When courts interpret the scope of an arbitration provision, they must apply "a presumption of arbitrability." *AT&T*, 475 U.S. at 650 (internal quotation marks and citation omitted). The presumption reflects the purpose of the FAA: to enact "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765. Therefore, any doubts regarding arbitrability "should be resolved in

5

favor of arbitration." *Id.* at 24-25; *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 346, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ("[O]ur cases place beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' ....") (alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).

When determining whether a dispute should be arbitrated, a court must answer two questions: (1) whether there is a valid agreement to arbitrate, and, if so, (2) whether the subject of the dispute is within the scope of the arbitration agreement. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). Whether an arbitration agreement exists is a matter of state contract law. *Meyer*, 868 F.3d at 73-74. The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration agreement, although "[t]his burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original). The Court applies a "standard similar to that applicable for a motion for summary judgment" when deciding a motion to compel arbitration. *Meyer*, 868 F.3d at 74 (internal quotation marks and citation omitted). If the Court determines that the parties have agreed in writing to arbitration, then the Court will stay the proceedings. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

### b. Whyte's claims are covered by the parties' agreement to arbitrate claims related to her employment.

Whyte admits that the Arbitration Agreement is a valid and binding contract between the parties to resolve certain disputes arising from her employment before JAMS. However, she maintains that the arbitrability of any dispute arising under the agreement must be decided under New York law, and CPLR § 7515 prohibits arbitration of discrimination claims. WeWork

rejects that interpretation and insists that "a state law choice of law clause in an arbitration agreement is not sufficient to override the presumptive application of the FAA" to the question of arbitrability.  (Dkt. No. 17, Def.'s Reply, at 2.)

Absent a clause committing the arbitrability question to the arbitrators, the court has jurisdiction to decide this threshold issue. *See, e.g.*, *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 395 (2d Cir. 2018) (applying presumption that district courts retain authority to decide "whether an arbitration clause in a concededly binding contract applies to a particular controversy").

### i. The Federal Arbitration Act governs the question of arbitrability.

Whyte claims that the New York choice of law provision precludes arbitration of her discrimination claims.  But the language on which Whyte rests her argument – that the Agreement "shall be governed and shall be interpreted in accordance with the law of the State of New York," (Arbitration Agreement, § 6) – does not say what law this Court must apply to determine arbitrability of particular claims, or which tribunal must decide the merits of this case.  It merely instructs the tribunal to apply when interpreting the agreement.  In other words, the choice of law clause does not answer whether Whyte's claims are arbitrable, only that New York principles of contract interpretation apply when reading the EDRP.

When interpreting a New York choice of law provision like the one at issue here, the New York Court of Appeals has applied the rules of arbitrability mandated by the FAA, meaning that dispute arising under the contract shall be arbitrable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  In *Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp.*, the court held that, absent an agreement for New York law to "govern both the agreement *and its enforcement*," a New York choice of law provision merely

7

informs the arbitrator what law to apply, but does not grant New York courts jurisdiction to resolve a dispute otherwise covered by an arbitration provision. 4 N.Y.3d 247, 253, 826 N.E.2d 802, 806, 793 N.Y.S.2d 831, 835 (2005). Therefore, a court considering arbitrability in the face of a New York choice of law provision that is silent as to enforcement must keep in mind that such provisions "[do] not . . . modify the default rules of the FAA" with respect to questions of arbitrability. *Penrod Management Group v. Stewart's Mobile Concepts, Ltd.*, No. 07-cv-10649, 2008 WL 463720, at *2 (S.D.N.Y. Feb. 19, 2008).

That the parties included two choice-of-law provisions in the Arbitration Agreement – one regarding interpretation under New York law, the other dealing with enforcement under the FAA – is entirely consistent with the conclusion that the FAA governs the arbitrability question. Both provisions can still be given effect. In *Mastruobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), the Supreme Court interpreted a contract containing both a choice-of-law provisions and clause mandating particular rules for arbitration, concluding that the "best way to harmonize" the two clauses was to read the choice-of-law provision "to encompass substantive principles that New York courts would apply, but not to include [New York's] special rules limiting the authority of arbitrators." *Id.,* at 63–64. Courts in this Circuit have applied *Mastruobuno* and *Diamond Waterproofing* to cabin state choice-of-law provisions that are silent as to enforcement to "the substantive merits of the action," while applying federal arbitration rules to arbitrability issues such as "matters of procedure or the authority of the arbitrator." *InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 346 (S.D.N.Y. 2005); *see also Security Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322, 327 (2d Cir. 2004) ("Following *Mastruobuono*, our

circuit has held that a general choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the [FAA].") (internal quotation marks omitted).

Because the parties agreed that the FAA would govern enforcement of all claims "that arise out of or relates in any way to [Whyte's] employee relationship with [WeWork]," (EDRP § 3), the Court will apply the federal standards to determine whether Whyte's lawsuit is arbitrable under the Agreement.

### ii. CPLR § 7515 does not provide grounds for setting aside the Arbitration Agreement.

The FAA limits grounds for setting aside an agreement to arbitrate to those that "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. So, the question is not whether CPLR § 7515 carves out discrimination claims from class of "Covered Claims," but whether CPLR § 7515 is a ground for revoking "any contract" under the Section 2 of the FAA. It is not.

The Supreme Court has specifically forbidden state legislatures from creating exceptions to the FAA like the one embodied in CPLR § 7515: "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, 563 U.S. at 341 (citing *Preston v. Ferrer*, 552 U.S. 346, 353, 127 S.Ct. 978, 169 L.Ed.2d 917 (2008)). Section 2 of the FAA preserves generally applicable contract defenses available at common law, such as unconscionability or duress; it does not allow states to decide the arbitrability of individual issues by creating defenses "that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. That is precisely what CPLR § 7515 does, which is precisely why it offers Whyte no ground to revoke her agreement.

The only court to have considered the argument Whyte raises here – that CPLR § 7515 forbids arbitration of employment discrimination claims even when those claims are covered by

an agreement "governed by" the FAA – concluded that the newly-enacted statute "present[s] no generally applicable contract defense, and as such cannot overcome the FAA's command that the parties' Arbitration Agreement be enforced." *Latif v. Morgan Stanley & Co. LLC*, No. 18-cv-11528, 2019 WL 26100985, at *4 (S.D.N.Y. June 26, 2019).  There, as here, the agreement in question mandated that all covered claims were to be enforced in accordance with the FAA.  There, as here, plaintiff argued that his claims for discrimination, sexual harassment, and retaliation were not covered by the Arbitration Agreement.  Judge Cote disagreed, and held that applying CPLR § 7515 to invalidate the parties' agreement to arbitration the plaintiff's claims "would be inconsistent with the FAA." *Id.* at *3.  Because CPLR § 7515 applies to a specific type of claim, rather than a generally applicable defense, it does not fall within the FAA's savings clause.

The same reasoning applies here.  Since CPLR § 7515 is displaced by the FAA, Whyte may not rely on it to defeat WeWork's motion to compel arbitration.  WeWork's motion to compel arbitration is GRANTED, and the pending action is stayed pursuant to 9 U.S.C. § 3.

**II.     WeWork's motion for a permanent injunction is denied without prejudice.**

WeWork also moves for a permanent injunction barring Whyte from pursuing her claims outside of arbitration.  (*See* Dkt. No. 8, at 9.)  While a party may obtain a preliminary injunction by showing a likelihood of success on the merits, a permanent injunction is only appropriate when the moving party has shown "actual success on the merits." *Housing Works, Inc. v. Safir*, 101 F. Supp. 2d 163, 167 (S.D.N.Y. 2000).  In essence, WeWork asks this Court to issue a final judgment.  However, the Second Circuit has held that a district court "must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding'" – not close them completely. *Nicosia*, 834 F.3d at 229

(quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)).  Because the FAA "leaves no place for the exercise of discretion by a district court," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1986), WeWork's motion for a permanent injunction is denied without prejudice.

### III.     WeWork's motion for fees is denied.

WeWork also invokes this Court inherent equitable powers, as well 28 U.S.C. § 1927, to seek sanctions against Whyte and her counsel for a litigation strategy "designed solely to frustrate the arbitration proceeding pending in JAMS, harass and defame Defendant and the individual referenced in the Complaint, and obfuscate [Whyte's] obligations under the Arbitration Agreement."  (Dkt. No. 8, at 12.)

Whether under this court's equitable or statutory authority, "Bad faith is the touchstone" of a sanctions award. *U.S. v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991). Sanctions are only proper "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Teamsters*, 948 F.2d at 1345 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). A showing of bad faith requires:

> " 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts."

*Oliveri*, 803 F.2d at 1272 (quoting *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)).  The mere possibility that bad faith is to blame for a party's actions is not sufficient to merit sanctions against that party.  *See, e.g.*, *Adrian Shipholding Inc. v. Lawndale Grp. S.A.*, No. 08-cv-11124, 2012 WL 104939, at *9 (S.D.N.Y. Jan. 13, 2012)

WeWork argues that Whyte was aware her attempts to avoid arbitration were meritless and taken in bad faith, because WeWork's counsel: (1) sent Whyte the *Markel* opinion enforcing an arbitration provision in a different WeWork employment contract; and (2) informed Whyte's attorney of Judge Cote's decision in *Latif* that CPLR § 7515 does not creates a valid ground for revoking the Arbitration Agreement under the FAA.

WeWork has not presented "clear evidence" that Whyte acted in bad faith.

While the Court finds that Whyte was required to arbitrate this dispute for the same reasons that Judge Cote relied upon in *Latif*, it does not find that Whyte's position to the contrary was "completely without merit." *Oliveri*, 803 F.2d at 1273. Section 7515 is a relatively new statute, and opinion in *Latif*, which constrains neither this court nor the state court where Whyte originally filed, is the only one to date to consider its viability as a defense to a motion to compel arbitration under the FAA.

Without the benefit of any other state or federal ruling on the issue, Whyte's decision to challenge the arbitration provision was not unreasonable.  Indeed, WeWork's attempt to persuade Whyte with the decision in *Markel* – where the California plaintiff relied on the California unconscionability defense, as opposed to the New York statutory carve-out at issue here (*see* Dkt. No. 9, Turnbull Decl. Ex. A) – may have emboldened her, since it illustrated the dearth of precedent dealing with CPLR § 7515.

However, even if WeWork's position were supported by a more robust body of law, Whyte would still not be required to pay the company's fees. Standing alone, "the presentation of weak arguments" falls well short of the " 'serious and studied disregard for the orderly process of justice' that courts have required in order to impose inherent authority or § 1927 sanctions." *Thai Lao Lignite Co., Ltd. v.  Gov't of the Lao People's Democratic Republic,* No. 10 CIV. 5256

KMW, 2011 WL 4111504, at *11 (S.D.N.Y. Sept. 13, 2011) (quoting *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983)). Accordingly, WeWork's motion for its attorneys' fees is denied.

## CONCLUSION

WeWork's motion to compel arbitration is GRANTED, and these proceedings are stayed under 9 U.S.C. § 3.

WeWork's motion for a permanent injunction commanding Whyte's compliance with this Court's order compelling arbitration is DENIED prejudice.

WeWork's motion for fees and expenses is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 8. This shall constitute the written opinion of the Court.

Dated: June 11, 2020

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge

BY ECF TO ALL PARTIES

13