UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
AYESHA WHYTE,                             :    Case No. 20-cv-1800 (CM)
                                          :
                   Plaintiff,             :    ECF Case
                                          :
        vs.                               :
                                          :
WEWORK COMPANIES, INC.,                   :
                                          :
                   Defendant.             :
                                          :
----------------------------------------- X

**PLAINTIFF'S PETITION TO CERTIFY ORDER
FOR INTERLOCUTORY REVIEW**

**Table of Contents**

| | | |
|---|---|---:|
| **I.** | **INTRODUCTION** | **1** |
| **II.** | **LEGAL STANDARD** | **2** |
| **III.** | **ARGUMENT** | **3** |
| | A.  THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW: WHETHER THE FAA PREEMPTS N.Y. CPLR § 7515 | 3 |
| | B.  THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION AS TO WHETHER THE FAA CAN PREEMPT N.Y. CPLR § 7515 | 5 |
| | C.  IMMEDIATE APPEAL OF THE ORDER MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION | 10 |
| **IV.** | **CONCLUSION** | **10** |

# Table of Authorities

<u>Cases</u>

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57 (1974) ........................................................ 7

*Am. Nat'l Fire Ins. Co. v. Mirasco, Inc.*, 265 F. Supp. 2d 240, 249 (S.D.N.Y. 2003) ................... 3

*Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) ........................................................ 3

*Barrentine v. Arkansas-Best Freight System Inc.*, 450 U. S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) .................................................................................................................................. 9

*Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 200-01 (1956) ............................ 9

*Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) ....................... 4

*Circuit City Stores Inc. v. Adams*, 532 U. S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001) ....... 6

*Crespo v. Kreisel Co.*, 172 Misc. 2d 182, 185, 657 N.Y.S.2d 321, 323 (N.Y. Sup. Ct. 1997) ....... 9

*Drake v. Lab. Corp. of Am. Holdings,* 458 F.3d 48, 52 (2d Cir. 2006) .......................................... 4

*Ferraro v. Sec'y of U.S. Dep't of Health & Human Serve.*, 780 F.Supp. 978, 979 (E.D.N.Y.1992) ....................................................................................................................... 3

*Ferro v Ass'n of Catholic Schools*, 623 F.Supp 1161, 1167 (S.D.N.Y 1985) ................................ 9

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U. S. 20, 42, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ........................................................................................................................................ 6

*Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, 2 (S.D.N.Y. Sept. 17, 2013) ............. 4

*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) .......................................................................... 7

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ........................................................................... 7

*In re A2P SMS Antitrust Litig.*, 2015 BL 54733, 7 (S.D.N.Y. Mar. 02, 2015) ........................... 10

*In re Aggrenox Antitrust Litig.*, 2018 BL 46928, 10 (D. Conn. Feb. 12, 2018) ............................ 4

*In re Enron Corp.*, 2007 WL 2780394, 1 (S.D.N.Y. Sept. 24, 2007) ............................................ 5

*In re Lupron Mktg. & Sales Pracs. Litig.*, 313 F. Supp. 2d 8, 9 (D. Mass. 2004) ......................... 4

*In re Ocwen Fed. Bank*, 2006 WL 1371458, 1-2 (N.D. Ill. May 16, 2006) .................................. 4

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1420, 203 L. Ed. 2d 636, 651 (2019) ........... 1, 5, 6, 9

*Matter of Wertheim & Co. v. Halpert*, 48 N.Y.2d 681, 683 (1979) .............................................. 8

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986) .......................................................... 7

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U. S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ........................................................................................................................................ 5

*Tantaros v. Fox News Network, LLC*, No. 1:19-cv-7131 (ALC), 2020 BL 212588, 2 (S.D.N.Y. June 08, 2020) .......... 3

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F.Supp. 170, 172 (S.D.N.Y.1987) .......... 3

*United Airlines Inc. v. Mesa Airlines, Inc.* 219 F.3d 605 (7th Cir. 2000) .......... 4

Statutes

12 Vermont Stat. Ann. §5651 .......... 1, 8

28 U.S.C. § 1292(b) .......... 1, 3

9 U.S.C. § 1 *et seq.* .......... 1, 4, 5

California Labor Code § 432.6 .......... 1, 8

Md. Code Ann., Lab. & Empl. § 3-715 .......... 1, 8

N.J.S.A. 10:5-12.7(a) .......... 1, 8

New York CPLR § 7515 .......... passim

Rev. Code. Wash. § 49.44.085 .......... 1, 8

Other Authorities

Economic Policy Institute, A. Colvin, The Growing Use of Mandatory Arbitration 2, 4–6 (Apr. 6, 2018) .......... 6

EEOC Notice No. 915.002, July 10, 1997 (available at http://www.lawmemo.com/eeoc/mandarb.htm) .......... 7

Mulvaney, Erin "EEOC Rescinds Policy Against Binding Arbitration for Workers" Bloomberg News, Dec. 17, 2019 (available at https://news.bloomberglaw.com/daily-labor-report/eeoc-rescinds-policy-against-binding-arbitration-for-bias-claims) .......... 8

Rabud, Makeen, "Google Put An End To Forced Arbitration -- And Why That's So Important" Forbes, February 26, 2019, available at https://www.forbes.com/sites/rakeenmabud/2019/02/26/worker-organizing-results-in-big-change-at-google/#7edaf07d4399 (last visited June 30, 2020) .......... 8

Rules

FINRA Rule 13201(a) .......... 1, 8

I. **INTRODUCTION**

Plaintiff Ayesha Whyte hereby petitions this Court for an order certifying for interlocutory review the Court's Decision and Order dated June 11, 2020 granting Defendant WeWork Companies Inc.'s Motion to Compel Arbitration (the "Order") pursuant to 28 U.S.C. § 1292(b).

The Order turns purely on the legal question of whether, in the face of a contract containing a New York choice-of-law clause, the Federal Arbitration Act preempts New York CPLR § 7515, which bans contract terms forcing mandatory arbitration of employment discrimination claims. This Court rendered a thorough ruling and one readily acknowledging that the question is one of first impression in the Second Circuit, and one for which there is a "dearth of precedent." Order p. 12.

The question is also one of critical importance. Federal courts have interpreted the scope of the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) ("FAA") far beyond what congress originally intended in 1925. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1420, 203 L. Ed. 2d 636, 651 (2019) (Ginsburg, J. dissenting). Under such guidance, mandatory arbitration provisions in employment contracts have proliferated. *Id.* The result is that for decades employers have successfully siloed the voices of marginalized employee groups into a void where no one can hear it. Further, "[w]hen companies can muffle grievances in the cloakroom of arbitration, the result is inevitable: curtailed enforcement of laws designed to advance the well-being of the vulnerable." *Id.*

In response, New York, and a growing chorus of others, have enacted laws and rules aimed at assuaging the harm done to victims of discrimination through years of mandatory arbitration by banning such contract terms. *See, e.g.*, California Labor Code § 432.6; 12 Vermont Stat. Ann. §5651; N.J.S.A. 10:5-12.7(a); Md. Code Ann., Lab. & Empl. § 3-715; Rev. Code. Wash. § 49.44.085; FINRA Rule 13201(a).

1

Never has this issue been more timely. Plaintiff is a woman and she is black. Her complaint alleges that she was discriminated against on the basis of race and gender at a company where rampant discrimination starts at the very top and flourishes throughout the organization. WeWork has repeatedly threatened to seek sanctions against undersigned counsel and four of his black clients with claims against WeWork should they dare to seek the protection of New York CPLR § 7515. Rafkin Decl. ¶ 2. Indeed, WeWork sought those sanctions in this very case, which the Court denied. Notably, undersigned counsel filed another complaint in New York against WeWork. That case does no assert race discrimination claims nor is the plaintiff black. WeWork did not seek to compel arbitration in that matter even though the plaintiff signed the same arbitration agreement. Rafkin Decl. ¶ 3.

Plaintiff wants to pursue her claims in Court and have those claims tried to a jury. New York law says she and other employment discrimination victims are allowed to do so. Thus, there is a critical question to be answered by Second Circuit. Further, permitting immediate appeal of the Order compelling arbitration will materially advance the ultimate termination of this litigation. If interlocutory review is not granted, Plaintiff will be forced to pursue her claims first through arbitration entailing, at a minimum, discovery practice and a hearing on the merits. As discussed below, whether Plaintiff prevails or not at arbitration, she will very likely need to appeal the Order. And, of course, appellate authority may come out in the middle of Plaintiff's arbitration, further throwing the litigation into disarray. On the other hand, immediate interlocutory appeal will bring an important measure of certainty to this matter while addressing an issue of importance to others similarly situated.

## II. LEGAL STANDARD

The decision to certify an order for interlocutory review lies within the discretion of the district court. *See, e.g., Ferraro v. Sec'y of U.S. Dep't of Health & Human Serve.*, 780 F.Supp.

2

978, 979 (E.D.N.Y.1992) (collecting cases and citations). Pursuant to 28 U.S.C. § 1292(b), an interlocutory order for appeal may be certified if (1) the order "involves a controlling question of law;" (2) "as to which there is substantial ground for difference of opinion;" and (3) "that an immediate appeal of the order may materially advance the ultimate termination of the litigation." In considering a request for certification, a district court must carefully assess whether each of the three conditions for certification is met. *Am. Nat'l Fire Ins. Co. v. Mirasco, Inc.*, 265 F. Supp. 2d 240, 249 (S.D.N.Y. 2003).

Certification is warranted only in "exceptional cases," where an early review by the appellate court might "avoid protracted and expensive litigation." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F.Supp. 170, 172 (S.D.N.Y.1987). "However, '[w]hen a ruling satisfies these criteria and involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal.'" *Tantaros v. Fox News Network, LLC*, No. 1:19-cv-7131 (ALC), 2020 BL 212588, 2 (S.D.N.Y. June 08, 2020) (granting certification where operative question was whether a claim arising under §7515 necessarily raises a federal question) (citing and quoting *Balintulo v. Daimler AG*, 727 F.3d 174 , 186 (2d Cir. 2013).

### III.   ARGUMENT

#### A.   THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW: WHETHER THE FAA PREEMPTS N.Y. CPLR § 7515

As to the first condition, the Order plainly involves a controlling question of law.

"A question of law can [] be controlling if reversal of the district court's order 'could significantly affect the conduct of the action' or if 'the certified issue has precedential value for a large number of cases.'" *Tantaros*, 2020 BL 212588, 2 (quoting *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, 2 (S.D.N.Y. Sept. 17, 2013)). "A controlling question of law is one that is serious to the conduct of the litigation, either practically or legally." *In re Aggrenox Antitrust Litig.*, 2018 BL 46928, 10 (D. Conn. Feb. 12, 2018) (internal quotations omitted) (citing *In re*

3

*Lupron Mktg. & Sales Pracs. Litig.*, 313 F. Supp. 2d 8, 9 (D. Mass. 2004)). The question of law "must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).

Questions of federal preemption are routinely recognized as controlling questions of law for certification purposes. *See e.g., Drake v. Lab. Corp. of Am. Holdings,* 458 F.3d 48, 52 (2d Cir. 2006)*, United Airlines Inc. v. Mesa Airlines, Inc*. 219 F.3d 605 (7th Cir. 2000); *In re Ocwen Fed. Bank*, 2006 WL 1371458, 1-2 (N.D. Ill. May 16, 2006).

Here, the question is whether the FAA preempts CPLR § 7515's prohibition of mandatory arbitration of discrimination claims in an agreement that includes a New York choice of law clause. If the FAA preempts CPLR § 7515 in such a situation, as this Court found, then Plaintiff is compelled to first pursue her claims to completion in private arbitration. *See* Order, p. 9-10. That arbitration requires significant time, cost and attorneys' fees to both parties. She would then have to return to court to appeal the Order granting the motion to compel arbitration. If successful, the parties may well find themselves having, at a minimum, to try the case again and potentially engage in additional discovery.

If the FAA does not preempt CPLR § 7515, then the landscape of the case significantly changes. Section 7515 states that an employee cannot be forced to arbitrate her race and gender discrimination claims pursuant to New York law. Plaintiff may instead proceed in court, which is where she desires to be and where CPLR § 7515 provides that she has a right to be.

Moreover, this matter has significant precedential value. As set forth further below, the Court recognized that this case presents a novel legal question. It is a question, we submit, that has a significant impact on the public at large as an appellate ruling will likely impact not just

4

Plaintiff but literally thousands of other employees who are the object of the protection of CPLR § 7515.

### B. THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION AS TO WHETHER THE FAA CAN PREEMPT N.Y. CPLR § 7515

As to the second factor, there is substantial ground for a difference of opinion as to federal preemption of CPLR § 7515. A substantial ground for difference of opinion exists where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Enron Corp.*, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007).

The operative question in this case is an issue of first impression in the Second Circuit. As this Court noted in its Order, Section 7515 is "a relatively new statute," and only one other opinion (another district court opinion) has considered its viability as a defense to a motion to compel arbitration under the FAA, and such opinion "constrains neither this court nor the state court where Whyte originally filed." Order p. 12. Indeed, this Court noted the "dearth of precedent" that exists on this issue. *Id.*

This dearth of precedent on CPLR § 7515 dovetails with a growing debate over the utility and enforceability of the FAA in the employment (and consumer) context that reaches the highest level of jurisprudence. In her recent dissent in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1420, 203 L. Ed. 2d 636, 651 (2019), Justice Ginsburg highlighted how "treacherously the Court has strayed from the principle that "arbitration is a matter of consent, not coercion." (Citing *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U. S. 662, 681, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010)).

> Congress enacted the Federal Arbitration Act (FAA) in 1925 "to enable merchants of roughly equal bargaining power to enter into binding agreements to arbitrate **commercial** disputes." *Epic Systems Corp. v. Lewis*, 584 U. S. \_\_\_, \_\_\_, 138 S. Ct. 1612, 200 L. Ed. 2d 889, at 923 (2018) (Ginsburg, J., dissenting) (emphasis in original). **The Act was not designed to govern contracts "in which one of the parties characteristically has little bargaining power**." *Prima Paint Corp. v.*

5

*Flood & Conklin Mfg. Co.*, 388 U. S. 395, 403, n. 9, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967);

*Lamps Plus, Inc.*, 139 S. Ct. at 1420 (Ginsburg, J. dissenting) (second emphasis added). *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U. S. 20, 42 , 111 S. Ct. 1647 , 114 L. Ed. 2d 26 (1991) (Stevens, J., dissenting) ("I doubt that any legislator who voted for [the FAA] expected it to apply . . . to form contracts between parties of unequal bargaining power, or to the arbitration of disputes arising out of the employment relationship."); *see also Circuit City Stores Inc. v. Adams*, 532 U. S. 105, 132, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001) (Stevens, J., dissenting) ("There is little doubt that the Court's interpretation of the [FAA] has given it a scope far beyond the expectations of the Congress that enacted it.")

In light of this broad interpretation of the power to compel arbitration pursuant to the FAA, mandatory arbitration provisions in employment contracts have proliferated. *See Lamps Plus, Inc.*, 139 S. Ct. 1407 at 1421 (citing Economic Policy Institute, A. Colvin, The Growing Use of Mandatory Arbitration 2, 4–6 (Apr. 6, 2018) (mandatory arbitration imposed by private-sector employers on nonunionized employees notably increased between 1995 and 2017). Forced upon employees by their employers as a condition of employment, such provisions are designed *only* the protect the party insisting on their use. "When companies can muffle grievances in the cloakroom of arbitration, the result is inevitable: curtailed enforcement of laws designed to advance the well-being of the vulnerable." *Lamps Plus, Inc.*, 139 S. Ct. at 1422 (Ginsburg, J. dissenting) (internal quotations and citations omitted).

In addition to buying confidentiality through mandatory arbitration, employers effectively thwart the development of public laws designed to protect victims of discrimination. Trial courts play a unique and critical role in the development of all statutory employment law through published case law, precedent, and oversight by higher level courts. A long-standing EEOC policy put it aptly:

6

> As the Supreme Court emphasized in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57 (1974), "the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts."  This principle applies equally to the other employment discrimination statutes.
>
> While the statutes set out the basic parameters of the law, many of the fundamental legal principles in discrimination jurisprudence have been developed through judicial interpretations and case law precedent. Absent the role of the courts, there might be no discrimination claims today based on, for example, the adverse impact of neutral practices not justified by business necessity, *see Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), or sexual harassment, *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986).  Yet these two doctrines have proved essential to the effort to free the workplace from unlawful discrimination, and are broadly accepted today as key elements of civil rights law.
>
> ***
>
> Through its public nature -- manifested through published decisions -- the exercise of judicial authority is subject to public scrutiny and to system-wide checks and balances designed to ensure uniform expression of and adherence to statutory principles.  When courts fail to interpret or apply the antidiscrimination laws in accord with the public values underlying them, they are subject to correction by higher level courts and by Congress.
>
> **These safeguards are not merely theoretical, but have enabled both the Supreme Court and Congress to play an active and continuing role in the development of employment discrimination law.**

EEOC Notice No. 915.002, July 10, 1997 (available at http://www.lawmemo.com/eeoc/mandarb.htm).

This policy stood until late 2019 when the two Republican members of the Commission voted to abolish it over the objection of the Commission's third, Democratic, member. *See* Mulvaney, Erin "EEOC Rescinds Policy Against Binding Arbitration for Workers" <u>Bloomberg News</u>, Dec. 17, 2019 (available at https://news.bloomberglaw.com/daily-labor-report/eeoc-rescinds-policy-against-binding-arbitration-for-bias-claims). The underlying rational, however, holds true.

In recognition of these principles articulated by Justice Ginsburg, the landscape of arbitration has begun to change. A wave of states, regulatory bodies and even large private

employers (Google, Adobe) have recognized the critical role the judiciary plays in public resolution of employment discrimination and harassment claims and advancement of the fundamental legal principles underlying them.  *See, e.g.* FINRA Rule 13201(a) ("A claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated under the Code."); Md. Code Ann., Lab. & Empl. § 3-715 ("Except as prohibited by federal law, a provision in an employment contract, policy, or agreement that waives any substantive or procedural right or remedy to a claim that accrues in the future of sexual harassment or retaliation for reporting or asserting a right or remedy based on sexual harassment is null and void as being against the public policy of the State."); Rev. Code. Wash. § 49.44.085 ("A provision of an employment contract or agreement is against public policy and is void and unenforceable if it requires an employee to waive the employee's right to publicly pursue a cause of action arising under chapter 49.60 RCW or federal antidiscrimination laws. . . "); *accord* California Labor Code § 432.6; 12 Vermont Stat. Ann. §5651; N.J.S.A. 10:5-12.7(a).  *See*, *also,* Rabud, Makeen, "Google Put An End To Forced Arbitration -- And Why That's So Important" <u>Forbes</u>, February 26, 2019, available at https://www.forbes.com/sites/rakeenmabud/2019/02/26/worker-organizing-results-in-big-change-at-google/#7edaf07d4399 (last visited June 30, 2020).

New York joined this wave in 2018 by enacting CPLR § 7515.  Section 7515 is the statutory embodiment of a long-standing public policy against the forced arbitration of employment discrimination claims in New York.  *See, e.g.*, *Matter of Wertheim & Co. v. Halpert*, 48 N.Y.2d 681, 683 (1979) ("Although arbitration is a favored method of dispute resolution, arbitration agreements are unenforceable where substantive rights, embodied by statute, express a strong public policy which must be judicially enforced . . . This is especially true in the area of discrimination . . .").

As Justice Ginsburg noted, the passage of CPLR § 7515 and other similar developments are a step in the right direction to assuaging the harm done by rampant enforcement of mandatory arbitration. *Lamps Plus, Inc.*, 139 S. Ct. at 1422. She noted such developments "are sanguine, for [p]lainly, it would not comport with the congressional objectives behind a statute seeking to enforce civil rights . . . to allow the very forces that had practiced discrimination to contract away the right to enforce civil rights in the courts.'" (*Id.* quoting *Barrentine v. Arkansas-Best Freight System Inc.*, 450 U. S. 728, 750, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) (Burger, C. J., dissenting).

The review of FAA preemption is particularly critical in this matter. Defendant is a New York employer, Plaintiff was hired to work in New York, the arbitration agreement at issue contains a New York choice of law clause, and every collateral employment document provided to and signed by Plaintiff as part of her employment there is governed by New York law. *See Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 200-01 (1956) (in a damage action for wrongful dismissal under an employment contract, Court held that the Federal Arbitration Act did not apply to the contract's arbitration clause since there was "no showing that petitioner while performing his duties under the employment contract was working 'in' commerce, was producing goods for commerce, or was engaging in activity that affected commerce"); *Ferro v Ass'n of Catholic Schools*, 623 F.Supp 1161, 1167 (S.D.N.Y 1985) (teacher's employment contract did not evidence a transaction involving commerce); *Crespo v. Kreisel Co.*, 172 Misc. 2d 182, 185, 657 N.Y.S.2d 321, 323 (N.Y. Sup. Ct. 1997) ("under no stretch of the term can it be said that the operation of a single apartment building in Manhattan can be said to affect or involve interstate commerce").

### C. IMMEDIATE APPEAL OF THE ORDER MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

Permitting immediate appeal of the Order compelling arbitration will materially advance the ultimate termination of the litigation. This requirement "is met when an intermediate appeal promises to advance the time for trial or to shorten the time required for trial." *In re A2P SMS Antitrust Litig.*, 2015 BL 54733, 7 (SDNY Mar. 02, 2015).

Here, if interlocutory review is not granted, Plaintiff will be forced to pursue her claims first through arbitration. That will entail, at a minimum, discovery practice and a trial on the merits. We anticipate a five-day hearing, given the claims and breadth of witnesses, both current and former employees of WeWork. Whether Plaintiff prevails or not at arbitration, she will seek to appeal. That is, should an arbitrator rule against her, that would obviously incent her all the more to pursue the appeal. But even if the arbitrator rules in her favor on some or all claims, she may well pursue the appeal because a jury may view damages differently or find differently on certain claims than an arbitrator. If the Order is then overturned, the parties would find themselves back to square one in terms of a trial in a court of law and may have to engage in additional discovery to the extent parties look to undo discovery rulings rendered in the arbitration.

On the other hand, immediate interlocutory appeal will bring an important measure of certainty to this matter while addressing an issue of importance to others similarly situated.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court grant Plaintiff's Petition to Certify the Order for interlocutory review.

Dated: July 3, 2020                                   RAFKIN ESQ.

      Randolph, New Jersey

                                          By: _____/s/ Seth R._____
                                              Seth A. Rafkin

                                      1201 Sussex Turnpike, Suite 102
                                      Randolph, New Jersey  07869

                                      *Attorneys for Plaintiff Ayesha Whyte*